**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID ANDRADE, et al. | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-08-2668 |
| AEROTEK, INC. | : | |
| | ...o0o... | |

**MEMORANDUM**

Plaintiffs David Andrade, Stephanie Anstiss, Bobbi Cameron, Ryan DeLodder, Janel Kleinpeter, and Julia McBride (collectively "plaintiffs"), on behalf of themselves and those similarly situated, have sued their former employer, Aerotek, Inc. ("Aerotek" or "defendant"), for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Now pending before the court is a motion by plaintiffs for conditional collective action certification and court-approved notice under FLSA § 216(b). The issues in this case have been fully briefed, and a hearing was held on August 11, 2009. For the reasons stated below, plaintiffs' motion for collective action certification will be denied in part and granted in part.[1]

---

[1] Aerotek has filed motions to strike the declarations of plaintiffs Andrade and Kleinpeter and strike the plaintiffs' surreply to their opposition to conditional collective action certification. Given the analysis below, these motions will be denied as moot.
   Aerotek also has filed a motion to strike the plaintiffs' proposed notice to class members. The court has considered both parties' arguments for and against striking this proposed notice, as well as plaintiffs' revised notice form, and has determined that a further-revised notice form is appropriate. This notice form, attached to this memorandum, removes many of the features that concerned Aerotek, while preserving the key features supported by the plaintiffs. It also incorporates some of both parties' suggestions as to amended language.
   On Aerotek's particular objection to the plaintiffs' request for phone numbers of potential plaintiffs in addition to names and addresses, the court agrees that, while names and addresses of employees are appropriate pieces of information to seek from defendants, phone numbers are generally unnecessary. *See, e.g.*, *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2006) ("the district court may facilitate this notice by allowing discovery of the names and addresses of potential plaintiffs") (quotations and citation omitted); *cf. Williams v.*

1

**BACKGROUND**

Aerotek is an international staffing services company, headquartered in Hanover, Maryland, with approximately 150 offices in the United States; it provides staffing services in a variety of areas. Its staffing efforts are divided into eight divisions: commercial, professional, aviation, scientific, contract engineering, energy services, automotive, and environmental engineering. In order to fill the positions its clients seek to have staffed, Aerotek relies on its thousands of recruiters – over 2,100 employees in the United States alone, by Aerotek's own estimate[2] – to find, screen, and recommend suitable candidates.

Each Aerotek office is independently overseen by a Director of Business Operations ("DBO") who manages a mixture of Recruiters, Recruiter IIs, Account Recruiting Managers ("ARMs"), and Recruiter Trainees. Recruiters and Recruiter IIs are the primary employees tasked with placing candidates with client companies. Aerotek pays both Recruiters and Recruiter IIs an annual salary plus commissions, and classifies them as exempt from the FLSA. Recruiters and Recruiter IIs have similar overall duties – namely, identifying, screening (via

---

*Long*, 585 F. Supp. 2d 679, 691 (D. Md. 2008) (ordering defendant employer to produce names and addresses of current and former employees). Plaintiffs complain that, because many of the potential plaintiffs in this suit are recent college graduates who move frequently, many of the addresses Aerotek may supply will no longer be current. While this is a valid concern, it can be alleviated if Aerotek agrees to an arrangement suggested by a sister court, namely that it will supply phone numbers to plaintiffs upon request in cases where mailed notice is returned as undeliverable. *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 836 & n.9 (E.D. Va. 2008). Accordingly, provided it agrees to this arrangement, Aerotek will not be required to produce employee phone numbers at this stage.

Both parties also have filed motions to seal various documents submitted to the court. No objections have been raised to these motions and they appear justified, in light of the sensitive material contained therein. Thus, these motions will be granted.

[2] This figure includes Recruiter Trainees, Recruiters, Recruiter IIs, and Account Recruiting Managers, positions to be described below.

phone and live interviews), and recommending candidates for placement.  There is a wide variety, however, from Recruiter to Recruiter, in the specific functions they perform and the degree of frequency with which they perform them.  (*See infra* Section A.)  The primary formal difference between Recruiters and Recruiter IIs is salary; Recruiter IIs – usually Recruiters who have worked for at least a year – are paid a higher salary.

Recruiter Trainees are new hires who are being prepared for possible positions as Recruiters.  Aerotek pays Recruiter Trainees by the hour and classifies them as non-exempt under the FLSA.  All Recruiter Trainees undergo a 90-day training period, during which time they complete computer training modules, shadow existing recruiters, learn about the industries in which they will be recruiting, and otherwise become acclimated to the tasks and responsibilities involved in recruiting.  Their work is closely monitored during this time.  They receive evaluations at the 45-day mark and 90-day mark, and if, at the end of the training period, management determines they have been performing satisfactorily, they are hired on as full-fledged Recruiters.  Not all Recruiter Trainees are hired to be Recruiters.

ARMs perform a combination of recruiting, client account management, and sales functions; the particular combination is determined by each DBO in each office.  In their recruiting capacity, they complement the efforts of Recruiters on their office team.  In their account management capacity, they help keep track of existing client accounts and the work Recruiters and Recruiter IIs are doing to fill positions for those clients.  In their salesperson capacity, they solicit business from new clients in an effort to increase the volume of Aerotek placements (which increases Aerotek's revenue).  Given their enhanced functions, and given that they are usually former Recruiters or Recruiter IIs, they are viewed as more senior than

Recruiters and Recruiter IIs. (*See* Def.'s Opp. at Ex. B5, Kleinpeter Dep. at 369 (stating that ARMs, unlike Recruiters and Recruiter IIs, are considered to be part of Aerotek management, and "ha[ve] significant seniority over everybody else").) Like Recruiters and Recruiter IIs, ARMs are salaried and classified as non-exempt by Aerotek.

All of the named plaintiffs in this suit worked as both Recruiter Trainees and Recruiters in various Aerotek offices, and two – Andrade and Kleinpeter – worked as Recruiter IIs as well. Kleinpeter also worked for a period of time as an ARM. Four of the plaintiffs were employed at Aerotek's Charlotte, North Carolina office (Anstiss, Cameron, Kleinpeter, and McBride) and worked in its professional and commercial divisions.[3] The other two plaintiffs were employed in two of Aerotek's California offices; Andrade worked at the Northridge office in its commercial division and DeLodder worked at the San Diego office in its scientific division. All of the plaintiffs either resigned or were terminated from their positions by June 30, 2008.

The plaintiffs filed suit in the Southern District of New York on July 24, 2008, and the case was transferred to this court on October 9, 2008. The original complaint in this case alleged two counts of violations of the FLSA – one count on behalf of the individual named plaintiffs and one count on behalf of the putative class – for misclassification of plaintiffs as exempt, in

---

[3] Some plaintiffs also appear to have done occasional work for other divisions as well. (*See, e.g.*, Def.'s Opp. at Ex. B2, Anstiss Dep. at 299; *id.* at Ex. B5, Kleinpeter Dep. at 106.) Their primary employment, however, was with the divisions listed.

violation of § 213[4], and for failure to pay overtime wages, in violation of § 207(a)(1).[5]  (Compl. ¶¶ 58 & 64.)  It defined the putative class as follows:

> All current and former employees of Defendants who were employed as Recruiter-Trainees, Recruiters and Recruiter Account Managers in the United States, during the applicable statutory period, who worked at least one (1) hour of overtime, and who were subjected to Defendants' misclassification of them as exempt from overtime and thereby not paid overtime premiums for their overtime work.

(Compl. ¶ 18.)  This proposed class made no distinction between Recruiter Trainees and full-fledged Recruiters.

The first amended complaint, for which leave to file was granted on July 6, 2009, has four counts.  The first two counts – one individual and one on behalf of the putative class – allege that Aerotek violated the FLSA by misclassifying Recruiters and ARMs as exempt and failing to pay them overtime wages.  (First Amend. Compl. ¶¶ 53 & 59.)  The second two counts – again one individual and one on behalf of the class – allege that Aerotek violated the FLSA by refusing to pay Recruiter Trainees overtime for hours it made them work "off the clock."  (First

---

[4] Section 213 of the FLSA sets out those positions that employers may lawfully claim as exempt from its protections.  29 U.S.C. § 213.  An employer is in violation of the FLSA whenever it claims as exempt a position that should be considered non-exempt under FLSA's provisions.

[5] Section 207(a)(1) of the FLSA reads:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Amend. Compl. ¶¶ 65-66 & 72-73.)  This amended complaint defines the putative classes as follows:

> (a) All current and former employees of AEROTEK who were employed as Recruiters and Recruiter Account Managers in the United States, during the applicable statutory period, who worked at least one (1) hour of overtime and who were subjected to AEROTEK's misclassification of them as exempt from overtime and thereby not paid overtime premiums for their overtime work.
>
> (b) All current and former employees of AEROTEK who were employed as Recruiter-Trainees in the United States, during the applicable statutory period, who despite being non-exempt, were not paid wages for "off the clock" hours and/or overtime compensation for "off the clock" hours in workweeks in excess of 40 hours.

(First Amend. Compl. ¶ 13.)  Thus the amended complaint creates two potential classes: one comprised of Recruiters and ARMs, and one comprised of Recruiter Trainees.  Henceforth I will refer to the first class as Class A and the second class as Class B.  The plaintiffs now seek conditional collective action certification for both classes.

## **ANALYSIS**

Determinations of whether conditional collective action certification and court-facilitated notice are appropriate are left to the court's discretion.  *See Choimbol*, 475 F. Supp. 2d at 563 (regarding certification); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995) (regarding notice).  When making such determinations, "[t]he paramount issue . . . is whether plaintiffs have demonstrated that potential class members are 'similarly situated.' . . . . Accordingly, plaintiffs must make a preliminary factual showing indicating a similarly situated group of potential plaintiffs exists."  *Long*, 585 F. Supp. 2d at 684 (quoting § 216(b)[6]) (internal

---

[6] 29 U.S.C. § 216(b) states, in pertinent part:

citations omitted).  This showing often consists of a demonstration that "they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Choimbol*, 475 F. Supp. 2d at 564; *see Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988), *aff'd in part*, 862 F.2d 439, 444 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989) (noting that, with initial collective action certifications under § 216(b), "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan").  Generally, plaintiffs need only put forward "relatively modest" evidence that they are similarly situated in order to obtain approval to proceed as a class.  *D'Anna*, 903 F. Supp. at 894.  "When sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, however, a court can . . . deny certification outright."  *Purdham v. Fairfax County Public Schools*, --- F. Supp. 2d ----, 2009 WL 1766600, *2 (E.D. Va. June 22, 2009).

*A. Recruiters and ARMs (Class A)*

Based on the record currently before it, the court finds collective action certification not to be appropriate for the plaintiffs' proposed class of Recruiters and ARMs.  The plaintiffs' own deposition testimony reveals that there are many substantive ways in which Recruiters are differently situated from both each other and ARMs.  Aerotek thoroughly lays out these

---

An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

7

differences in its opposition (*see* Def.'s Opp. at 8-16); some key differences are highlighted here. Regarding Recruiters, the plaintiffs' testimony shows that the type and number of candidates they recruit varies a great deal from division to division and office to office.[7] Recruiters' degree of hiring and firing authority also varies from division to division and even from Recruiter to Recruiter within the same division,[8] as does their degree of authority to negotiate wages and benefits.[9] Their amount of direct client contact also varies.[10] As for ARMs, only one of the named plaintiffs ever worked as an ARM, and by her own account the responsibilities of ARMs

---

[7] For instance, some Recruiters seek out mainly candidates for blue-collar positions, while others seek out mainly candidates for white-collar positions. (*Compare* Def.'s Opp. at Ex. B1, Andrade Dep. at 98; *id.* at Ex. B2, Anstiss Dep. at 299-300 *with id.* at Ex. B4, DeLodder Dep. at 118-19; *id.* at B5, Kleinpeter Dep. at 118.) Also, some Recruiters recruit for positions confined to their geographic area whereas others recruit for positions throughout the country. (*Compare id.* at Ex. B1, Andrade Dep. at 274 *with id.* at Ex. B4, DeLodder Dep. at 108-10.) On numbers of candidates recruited, some Recruiters may fill up to fifty open positions at a time, whereas others may fill only a handful over their entire span of employment. (*Compare id.* at Ex. B1, Andrade Dep. at 173-74 *with id.* at Ex. B4, DeLodder Dep. at 56; *id.* at Ex. B6, McBride Dep. at 273.)

[8] Andrade, Anstiss, and Kleinpeter all recall making "Go to Work" hires, hires that result in a candidate being sent directly to the client company upon hiring, usually that same day, without the client being involved in their selection. (Def.'s Opp. at Ex. B1, Andrade Dep. at 264-65; *id.* at Ex. B2, Anstiss Dep. at 147 & 149; *id.* at Ex. B5, Kleinpeter Dep. at 188-89.) McBride, however, who worked at the same office and in the same division as Kleinpeter, did not make "Go to Work" hires. (*Id.* at Ex. B6, McBride Dep. at 183-84.) On terminations, McBride reports that she notified contractors (candidates who had been hired) of their termination from a position, whereas Kleinpeter, who again worked in her same division, reports that she did not perform this function. (*Id.* at Ex. B5, Kleinpeter Dep. at 258; *id.* at Ex. B6, McBride Dep. at 231.)

[9] For example, DeLodder claims that he negotiated pay rates with candidates before placing them, but Andrade and McBride claim they had no ability to negotiate pay rates. (Def.'s Opp. at Ex. B1, Andrade Dep. at 58 & 237; *id.* at Ex. B4, DeLodder Dep. at 131-46; *id.* at Ex. B6, McBride Dep. at 91 & 263.)

[10] Andrade, for instance, says that he had direct client contact at various points, whereas Cameron says she never spoke directly with a client. (Def.'s Opp. at Ex. B1, Andrade Dep. at 89 & 334; *id.* at Ex. B3, Cameron Dep. at 147-48.)

differ in important ways from those of Recruiters. (*Id.* at Ex. B5, Kleinpeter Dep. at 369.) Additional testimony submitted by Aerotek shows that the responsibilities of ARMs also differ from one ARM to the next. (*Compare id.* at Ex B5, Kleinpeter Dep. at 368 *with* Ex. A4, Fong Decl. ¶¶ 9-10 & 15 *and* Ex. A5, Safley Decl. ¶¶ 9 & 13.)

Given this degree of dissimilarity among Recruiters and between Recruiters and ARMs, the court will decline to conditionally certify plaintiffs' proposed Class A. *See D'Anna*, 903 F. Supp. at 893-84 (denying conditional collective action certification where plaintiffs failed to show that a similarly situated class existed); *see also O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 250 (D. Mass. 2006) (staying conditional collective action certification of staffing managers in part because plaintiffs had failed to show how all those in their position throughout the country were subject to the same policies and thus similarly situated).[11]

---

[11] The court notes that, in addition to the functional differences among Recruiters and ARMs, it is not clear they have been subjected to an unlawful policy, because these positions appear to fall within the FLSA's administrative exemption. 29 U.S.C. § 213(a)(1).
FLSA regulations define "administrative employee" as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. All three requirements must be met in order for an employee to be treatable as an administrative employee and therefore exempt from the FLSA. In the present case, it is undisputed that the first requirement is met.
Regarding the second requirement, the record strongly suggests that the work of Recruiters and ARMs is "directly related to the management or general business operations of . .

9

*B. Recruiter Trainees (Class B)*

Based on the record currently before the court, and in contrast to Class A, it appears that at least some of Aerotek's Recruiter Trainees are similarly situated for purposes of conditional class action certification and court-approved notice. As previously discussed, all Recruiter Trainees undergo a 90-day training period, during which time they complete computer training modules, shadow current Recruiters, and become acclimated to the nature and pace of recruiting in their division. (Def.s' Opp. at Ex. A1, DeAngelis Decl. ¶¶ 16-17.) All Recruiter Trainees also receive an evaluation at the 45-day mark and again at the end of their 90-day training. (*Id.* ¶ 19.) Beyond these superficial similarities, the plaintiffs argue that the key fact making Aerotek's Recruiter Trainees similarly situated is their common subjection to a policy of encouraging

---

. [Aerotek's] customers." Aerotek is a staffing services company, and its Recruiters and ARMs are tasked with finding, interviewing, and recommending candidates to staff positions at Aerotek's client companies. As such, their work appears to be directly related to the general business operations of Aerotek's customers. *See* 29 C.F.R. §§ 541.201(a)-(c); *see id.* § 541.203(e).

Regarding the third requirement, the named plaintiffs' depositions suggest that their primary duty as Recruiters and ARMs included "the exercise of discretion and independent judgment with respect to matters of significance." (*See, e.g.*, Def's Opp. at Ex. B1, Andrade Dep. at 249; *id.* at Ex. B2, Anstiss Dep. at 248 & 293; *id.* at Ex. B4, DeLodder Dep. at 130; *id.* at Ex. B5, Kleinpeter Dep. at 98, 181, 187, & 194.) *See* 29 C.F.R. §§ 541.202(a)-(d); Dep't of Labor Op. Ltr., 2005 WL 3308616 (Oct. 25, 2005) (finding staffing managers at a temporary staffing agency to fall within the administrative exemption where it was shown that they "recruit; interview; hire and recommend placement of employees to particular assignments; . . . [and] exercise the requisite discretion and independent judgment with respect to matters of significance"). Other courts have found similar positions exempt. *See Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1365-66 (11th Cir. 1997) (affirming jury's finding that sales recruiter fell within the administrative exemption); *Hudkins v. Maxim Healthcare Services, Inc.*, 39 F. Supp. 2d 1349, 1349-50 (M.D. Fla. 1998) (finding recruiter of nurses for defendant's client hospitals fell within the administrative exemption).

No final decision has been made on this point; the pertinent issues are still being briefed in connection with Aerotek's most recent motion for summary judgment as to Janel Kleinpeter and the briefing may persuade the court to reconsider its initial assessment.

10

overtime work while forbidding the reporting of overtime hours.  (*See* Pls.' Cert. Mot. at 11; Pls.' Reply at 6-9).  Their subjection to this policy, they argue, warrants conditional collective action certification.  *Cf. Choimbol*, 475 F. Supp. 2d at 564 (granting conditional class certification where plaintiffs demonstrated sufficiently that they were all subjected to defendant's policy of withholding overtime pay).

Specifically, plaintiffs allege that all Recruiter Trainees are required, pursuant to company policy, not to report more than forty-five hours of work per week despite being required to work well over fifty hours per week, a figure that includes the expected hours of their work day and the number of "off the clock" events they are instructed to attend.[12]  Several plaintiffs stated in their depositions that they were told by their supervisors to work more than forty-five hours per week while Recruiter Trainees but not to report the time past the forty-fifth hour on their time sheets.  (*See* Def.s' Opp. at Ex. B2, Anstiss Dep. at 72; *id.* at Ex. B3, Cameron Dep. at 76-77 ("Q: Did anyone tell you to work more than 45 hours and not put it down? A: Absolutely.  Q: Who was that?  A: Everyone in the office, account managers, the other recruiters, other trainees."); *id.* at Ex. B4, DeLodder Dep. at 88-89 (recalling being instructed not

---

[12] Plaintiffs contend that, while Recruiter Trainees, they were required to work from 7:30 a.m. to 6:00 p.m. (10.5 hours per day) at least five days a week (*see* Def.s' Opp. at Ex. B1, Andrade Dep. at 120; *id.* at B2, Anstiss Dep. at 54 & 68; *id.* at Ex. 4, DeLodder Dep. at 93; *id.* at Ex. 5, Kleinpeter Dep. at 132), with less than an hour for lunch (*see id.* B2, Anstiss Dep. at 284; *id.* at Ex. B4, DeLodder Dep. at 87), and it is undisputed that they were not paid for time spent at lunch. (Pls.' Cert. Mot. at Ex. 8, Andrade Decl. ¶ 6; *id.* at Ex. 8, Kleinpeter Decl. ¶ 10; Def.s' Opp. at Ex. C1, DeLodder Time Sheet (showing time sheet grid on which employees were supposed to record the start and end time of their meals and subtract that from hours worked each day).)  They also contend that they were required to attend many "off the clock" events, like corporate happy hours and networking functions with clients, but these events are not included on their time sheets. (*See* Def.s' Opp. Ex. B3, Cameron Dep. at 237; *id.* at Ex. B4, DeLodder Dep. at 88-89; *id.* at Ex. B5, Kleinpeter Dep. at 420-21.)

to include "off the clock" events like networking meetings on his time sheets); *id.* at Ex. B5, Kleinpeter Dep. at 130-33 (indicating that her superiors expected Recruiter Trainees to work more than forty-five hours per week but only to record 45 hours); *id.* at Ex. B6, McBride Dep. at 78 ("Q: Do you specifically recall any Aerotek manager or supervisor telling you not to write down hours you had actually worked over 45? A: Yes. Q: Okay, and which individual was that? A: My manager."). An alleged common policy requiring non-exempt employees to under-report hours worked may be sufficient to warrant conditional class certification and court-approved notice. *See Camper v. Home Quality Management Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000) (granting court-approved notice where plaintiffs sufficiently alleged that employer had a policy of requiring more work from employees than it allowed them to reflect on their time clocks).

Aerotek maintains that, if there were any common policy regarding Recruiter Trainee hours, it was simply to have Recruiter Trainees not work beyond forty-five hours per week. Christopher DeAngelis, the DBO for Aerotek's Charlotte and Huntersville offices, describes the practice in his offices in this way: "I have instructed Recruiter Trainees in my offices . . . that they are to work no more than 45 hours a week. . . . [ARMs] have to obtain approval from me to allow Recruiter Trainees to work more than 45 hours in a week." (Def.s' Opp. at Ex. A1, DeAngelis Decl. ¶ 15.) This view is substantiated by testimony from plaintiffs. (*See* Def.s' Opp. at Ex. B1, Andrade Dep. at 201 (recalling that his supervisor told him, while he was a Recruiter Trainee, "[t]hat we weren't supposed to be *working* overtime as trainees unless absolutely necessary") (emphasis added); *id.* at Ex. B6, McBride Dep. at 78 (recalling her supervisor telling recruiter trainees that there were too many instances of recruiter trainees "working too many hours and he didn't want to be paying overtime"); *see also id.* at Ex. A5, Safley Decl. ¶ 2 ("I

12

recall times when my supervisors and managers would instruct me to pack up and go home when I reached 45 hours for the week.").)

Having reviewed the record, I find there to be colorable evidence that some Recruiter Trainees were subjected to a common policy, one known to their supervisor, of discouraging reporting of overtime hours while requiring overtime work. Such evidence only exists for Aerotek's Charlotte, North Carolina office, however. All of the plaintiffs who have offered testimony indicating the existence of this under-reporting policy were former employees of Aerotek's Charlotte office. The other two named plaintiffs either make no mention of being told not to report overtime (Andrade) or suggest that, to the extent there was such a policy, it was limited to out-of-office events like networking functions (DeLodder). (*See* Def.s' Opp. at Ex. B4, DeLodder Dep. at 87-89; *see also id.* at 77 ("you're not allowed to work overtime"); Def.'s Suppl. Opp. at Ex. C9, Eubanks Dep. at 105-6 (DeLodder's supervisor from November 2007 onward stating under oath: "If any employee in my operation worked more hours or worked 50 or 55 hours a week because of the workload that they have, I would expect to pay them exactly the hours that they worked."); *id.* at Ex. C10, Fujimoto Dep. at 187 (Andrade's supervisor stating under oath that he never gave Recruiter Trainees instructions not to report overtime).) Furthermore, I see no evidence that Recruiter Trainees were discouraged from reporting overtime while being made to work overtime in any Aerotek divisions other than the divisions where plaintiffs Anstiss, Cameron, Kleinpeter, and McBride worked, namely commercial and professional.

Accordingly, conditional collective action certification shall be granted as to Class B, but only insofar as that class is limited to Recruiter Trainees who (a) worked in either or both of

Aerotek's Charlotte or Huntersville[13] offices between July 24, 2005 and July 24, 2008[14] and (b) worked for either its commercial division or its professional division or both.[15] *See Camper*, 200 F.R.D. at 520-21 (limiting court-approved notice to the one facility – out of defendant's forty-seven – at which plaintiffs put forward evidence of a policy of nonpayment of overtime); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435-36 (E.D. Va. 2002) (finding

---

[13] Although the evidence presented thus far only suggests a policy of discouraging overtime reporting in the Charlotte office, DBO Christopher DeAngelis was among those in Aerotek's management who allegedly enforced this policy, and he was also DBO of the Huntersville office. (Def.'s Opp. at Ex. A1, DeAngelis Decl. ¶ 4.)  Accordingly, the court is including current or former Recruiter Trainees from the Huntersville office in the class to be conditionally certified.

[14] The statute of limitations for suits brought under the FLSA is three years after the cause of action accrues for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a).  To establish willfulness, "the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 525 (D. Md. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  As discussed above, plaintiffs have made several allegations, reflected in sworn deposition testimony, that supervisors in certain Aerotek offices showed at least reckless disregard for Recruiter Trainees' overtime hours.  This testimony leads the court to conclude that applying the three-year statute of limitations is appropriate here. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002) (finding the three-year statute of limitations to be appropriate for notice purposes where the issue of willfulness could not be readily determined); *cf. Settle v. S.W. Rodgers, Co., Inc.*, 998 F. Supp. 657, 664 (E.D. Va. 1998) ("[W]here, as here, a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period.").
   The court stresses that it is making no final determination as to willfulness, but is rather assuming willfulness at this stage only for the purpose of facilitating notice.  This assumption will not create manageability problems for the class because, as Aerotek attests, it will only add 26 potential plaintiffs. (Def.'s August 19, 2009 Ltr. at 1.)

[15] Aerotek does not dispute that Recruiter Trainees are non-exempt under the FLSA's administrative exemption. (Def.s' Opp. at Ex. A1, DeAngelis Decl. ¶ 14.)  Therefore, this modified certification of Class B is not foreclosed by the administrative exemption. *See* 29 C.F.R. § 541.705 (discussing the extent to which trainees are not covered by any of the FLSA's exemptions); *see also supra* note 11 (discussing why the administrative exemption appears likely to apply to Class A).

14

additional notice unnecessary where notice had already been provided to the two city offices – out of a company's twenty offices in fifteen states – at which a policy of nonpayment of overtime had been shown to exist); *see also O'Donnell*, 429 F. Supp. 2d at 250 (staying conditional collective action certification in part because neither named plaintiff had "personal knowledge" of the practices of staffing managers in other divisions or offices).

## CONCLUSION

For the reasons stated below, plaintiffs' motion for collective action certification will be denied in part and granted in part. Court-approved notice will be granted, and will take the form set out below. A separate Order follows.

   August 26, 2009                                                  /s/
Date                                                         Catherine C. Blake
                                                                  United States District Judge

# NOTICE OF COLLECTIVE ACTION LAWSUIT

TO:   All current and former Recruiter Trainees at Aerotek, Inc., employed in either of Aerotek, Inc.'s Charlotte, North Carolina or Huntersville, North Carolina offices, who worked in either its commercial or professional divisions between July 24, 2005 and July 24, 2008.

RE:   Overtime lawsuit filed against Aerotek, Inc.

## INTRODUCTION

This letter contains important information concerning your rights under federal law (the Fair Labor Standards Act) as a result of your current or former employment with Aerotek, Inc.

A class-action lawsuit has been filed against Aerotek, Inc. Alleging failure to pay Recruiter Trainees fully for overtime work.  You are eligible to participate in this lawsuit.

The purpose of this Notice is to advise you how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this case, should you decide that it is appropriate and should you choose to do so.

This Notice is not an expression of any opinion as to the merits of any claims or defenses asserted by any party to this action.

## DESCRIPTION OF THE LAWSUIT

The Plaintiffs filed this lawsuit on behalf of themselves and all other persons who fit within the Class, as defined below.

The Plaintiffs believe they are entitled to recover from Aerotek, Inc. for unpaid overtime compensation and costs, including attorney's fees, under the federal Fair Labor Standards Act. Plaintiffs assert that they are entitled to time-and-one-half overtime compensation for all time spent working over 40 hours in any work week and that, contrary to federal law, Aerotek, Inc. has failed to fully compensate them for this time.  Aerotek, Inc. claims that it complied in full with all applicable laws and denies any wrongdoing and/or liability to Plaintiffs or any other past or present employee in the Class.

This Court takes no position regarding the merits of the parties' claims or defenses.  The rights of Plaintiffs or any member of the Class have not been established and are not guaranteed or certain.

## WHO CAN JOIN

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of other employees whom they claim are similarly situated.  Specifically, the Plaintiffs seek to sue on behalf of any employee of Aerotek, Inc. who worked as a Recruiter Trainee in either or both of Aerotek's Charlotte or Huntersville offices between July 24, 2005 and July 24, 2008; worked for the commercial and/or professional divisions; and was not paid full overtime compensation for hours worked in excess of 40 hours per week.

## YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, you may join this lawsuit (that is, you may "opt in") by completing and mailing the opt-in consent form found on the last page of this Notice and returning it to Plaintiffs' counsel at the following address:

> Steven Bennett Blau
> Blau Brown & Leonard LLC
> 54 West 21st Street, Suite 1009
> New York, New York 10010
> (212)725-7272 or Toll-free 800-9100-LAW
> sblau@bbpc-law.com

This form must be returned in sufficient time to have Plaintiffs' counsel file it with the federal court within sixty (60) days from the date of this Notice.  If you do not return the opt-in consent form to Plaintiffs' counsel in time for it to be filed with the federal court on or before the above deadline, you may not be able to participate in the lawsuit.

## EFFECT OF JOINING THIS LAWSUIT

If you choose to join this suit, you will be bound by the judgment whether it is favorable or unfavorable, or by any settlement of this action, if a settlement occurs.  Your legal interests will be represented by the law firm listed above.  These attorneys are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee.  If there is a recovery, the attorneys for the class will either receive a part of that recovery or will seek to have their attorneys' fees covered and paid for by Aerotek, Inc.

While the suit is pending, you may be required to provide information, appear for a deposition, and testify in court in Baltimore, Maryland.  Your refusal or failure to participate in providing information, give a deposition under oath, and/or testify in court may result in your dismissal from this lawsuit.

Your continued right to participate in this suit may also depend upon a later determination by the Court that you and the Plaintiffs are actually "similarly situated" in

accordance with federal law and that your claim has been filed within the applicable statute of limitations.

## NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join this lawsuit, you need not do anything. If you do not join, you will not be affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable.

## NO RETALIATION PERMITTED

Federal law prohibits AEROTEK from terminating your employment or discharging you or in any other manner discriminating against you because you "opt-in" to this case, or have in any other way exercised your rights under the Fair Labor Standards Act.

This notice and its contents have been authorized by the United States District Court for the District of Maryland.  This Court takes no position regarding the merits of the parties' claims or defenses.

## OTHER INQUIRIES

If you have further questions about this lawsuit, please contact counsel at the phone numbers or email address listed above.  Please do not contact the court.

                                                        Catherine C. Blake
                                                       United States District Judge

Dated: _____