# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANDRADE, et. al. | : |
| | : |
| v. | : Civil No. CCB-08-2668 |
| | : |
| AEROTEK, INC. | : |

## MEMORANDUM

David Andrade, Janel Kleinpeter, Ryan Delodder, Julia McBride, Bobbi Cameron, and Stephanie Anstiss ("the plaintiffs"), individually and on behalf of all others similarly situated as class representatives, have sued Aerotek, Inc. for failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"). Now pending before the court is the plaintiffs' motion for leave to file a second amended complaint; the defendant's motion for partial summary judgment on the misclassification claims of Mr. Andrade, Mr. Delodder, Ms. McBride, Ms. Cameron, and Ms. Anstiss; and the plaintiffs' cross-motion for summary judgment. For the reasons stated below, the plaintiffs' motion for leave to file a second amended complaint will be granted in part and denied in part; the defendant's motion for partial summary judgment will be granted; and the plaintiffs' cross-motion for summary judgment will be denied.

## BACKGROUND

*A.  Factual Background*

Aerotek is an international staffing company that provides technical, professional, and industrial recruiting and staffing services. The company is headquartered in Hanover, Maryland and has approximately 150 offices in the United States. Aerotek is divided into eight divisions,

1

each of which focuses on a particular industry or industries. It employs thousands of recruiters to find, screen, and recommend candidates to its clients.

Mr. Andrade, Mr. Delodder, Ms. McBride, Ms. Cameron, and Ms. Anstiss began working at Aerotek between November 2006 and March 2008. Although the five plaintiffs worked in different offices and divisions of Aerotek, they all completed a 13-week training program as Recruiter Trainees at the start of their employment. Recruiter Trainees are paid by the hour and are classified as non-exempt employees under the FLSA. After completing the training period, each of the plaintiffs demonstrated adequate proficiency in their areas of responsibility and each was promoted to the position of Recruiter. As Recruiters in Aerotek's Charlotte office, Ms. McBride, Ms. Cameron, and Ms. Anstiss earned a salary of $33,000, plus commission. As Recruiters in Aerotek's Northridge and San Diego offices, Mr. Andrade and Mr. DeLodder earned a salary of $39,000, plus commission. Aerotek classifies Recruiters as exempt from the FLSA.

The primary duty of the plaintiffs as Recruiters was to find and place professionals in contract positions with Aerotek's clients. The plaintiffs would identify, screen, and interview possible contractors for positions. Although Aerotek maintained a variety of standard tools to identify potential contractors, each plaintiff developed individual strategies to help locate candidates for specific clients. For example, Mr. Andrade developed his own "hot book" containing a list of people he decided would be good candidates for positions that might become available in the future, (*see* Andrade Dep. 165:20-25, Feb. 26, 2009), while Ms. Anstiss cultivated contacts with technical schools to reach promising students who might work as contractors in the future, (*see* Anstiss Dep. 189:1-190:22, March 2, 2009). After identifying

potential contractors, the plaintiffs would then conduct an in-person interview to assess a candidate's personality and fit for a client's job description. (*See, e.g.*, McBride Dep. 86:6-12, March 23, 2009; DeLodder Dep. 145:16-146:22, Feb. 27, 2009). Mr. Andrade and Mr. DeLodder would even negotiate pay with a potential candidate on occasion. (*See* Andrade Dep. 239:23-240:19; DeLodder Dep. 133:10-134:24). Thus, while none of the plaintiffs made the ultimate decision as to which candidates were presented to the client's hiring manager, the plaintiffs all played a significant role in recommending the best candidates to an Account Manager. After a candidate was hired, the plaintiffs also would continue counseling the candidate during his or her employment with Aerotek's client, including conducting performance reviews, disciplining, and even terminating a candidate on some occasions. (*See, e.g.*, Andrade Dep. 249:24-250:17; McBride Dep. 230:11-231:1).

  *B. Procedural History*

This case contains a lengthy procedural history that bears on the plaintiffs' request to file a seconded amended complaint. Accordingly, a portion of that history is recounted here.

The plaintiffs filed this case on July 23, 2008. On February 13, 2009, Ashlee Davis filed her consent to sue. On June 4, 2009, the plaintiffs requested leave to file a first amended complaint to add an additional claim. On July 6, 2009, the court granted the plaintiffs' motion because there was still ample time for both parties to engage in discovery.

On August 26, 2009, the court granted in part and denied in part the plaintiffs' request for conditional class certification. The conditional class certified by the court included:

> "all current and former employees of Aerotek, Inc. who worked as Recruiter trainees during the applicable statutory period in either or both of Aerotek Inc.'s Charlotte, North Carolina or Huntsville, North Carolina offices, worked for the commercial or professional divisions, and were not paid overtime compensation for hours worked in excess of 40 hours per week."

(Docket Entry No. 90 at 1).

On January 6 and February 11, 2010, respectively, Laura Keidel and Sean Rickard filed consents to opt-in to the collective action suit.

On March 30, 2010, the court granted the defendant's motion for summary judgment on the claims of plaintiff Janel Kleinpeter. Less than 10 days later, the plaintiffs filed a motion for leave to file a second amended complaint, requesting to add three additional named plaintiffs and to redefine the collective action class. The defendants have opposed the motion.

On June 28, 2010, the defendants filed another motion for partial summary judgment on the misclassification claims of Mr. Andrade, Mr. Delodder, Ms. McBride, Ms. Cameron, and Ms. Anstiss. The plaintiffs filed a cross-motion for summary judgment in response, which the defendant has opposed.

## ANALYSIS

*A.     The Plaintiffs' Motion for Leave to File a Second Amended Complaint*

The plaintiffs request leave to file a second amended complaint for two reasons: (1) to include in the caption as party plaintiffs Laura Keidel, Sean Rickard, and Ashlee Davis; and (2) to redefine the class certified by the court on August 26, 2009 to include Recruiter Trainees who worked in all seven (7) divisions in Aerotek's Charlotte, North Carolina and Huntsville, North Carolina offices. Rule 15(a) of the Federal Rules of Civil Procedure allows amendment of pleadings by leave of the court. Fed. R. Civ. P. 15(a). While Rule 15(a)(2) encourages the court to freely grant leave to amend "when justice so requires," such leave "is not to be given automatically." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). "Disposition of a motion to amend is within the sound discretion of the district court." *Id.* (citing *Foman v. Davis*, 371 U.S.

178, 182 (1962)). A court properly may deny a motion for leave to amend where the motion is unduly delayed and would unduly prejudice the defendant if granted. *Id.* "[D]elay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986).

The plaintiffs admit that their request to amend is delayed, but contend that these delays are *de minimis* and do not prejudice Aerotek. The court agrees that the delay in adding Ms. Keidel and Mr. Rickard as named plaintiffs is not accompanied by prejudice, bad faith, or futility. The plaintiffs did not learn the identities of Ms. Keidel and Mr. Rickard until the plaintiffs sent notice of this collective action suit on December 19, 2009. Ms. Keidel filed consent to opt-in to the collective action suit on January 6, 2010. Mr. Rickard filed consent to opt-in on February 11, 2010. The plaintiffs requested to add Ms. Keidel and Mr. Rickard as named plaintiffs only two to three months later, on April 9, 2010. Further, the plaintiffs are not requesting to add a new theory of liability, and there is no impending trial date. While the addition of Ms. Keidel and Mr. Rickard as named plaintiffs may require Aerotek to conduct two additional depositions and a limited degree of additional discovery, it will not unduly prejudice Aerotek. Accordingly, the plaintiffs' request for leave to amend their complaint by adding Ms. Keidel and Mr. Rickard will be granted.

Whether the plaintiffs' delay in requesting the addition of Ms. Davis as a named plaintiff will prejudice Aerotek is a separate question. As an initial matter, unlike Ms. Keidel and Mr. Rickard, the plaintiffs did not recently learn about Ms. Davis's existence through the notice and opt-in form sent to potential class members on December 19, 2009.[1] Thus, the plaintiffs cannot

---

[1] Ms. Davis does not qualify as a member of the collective action class certified by the court because she was employed as a Recruiter Trainee in the Engineering Division and not in the Commercial or Professional Division of Aerotek's Charlotte office.

explain their delay in adding Ms. Davis as a named plaintiff on the grounds that they recently obtained access to her identity.

A plaintiff's request to amend may be denied for unreasonable delay when the plaintiff previously failed to correct a pleading deficiency though given the opportunity to do so. Further, a plaintiff's request to amend a complaint may be unreasonable and prejudicial if delayed until after the defendant has been successful on a dispositive motion. *See Burton v. Youth Servs. Int'l, Inc.*, 176 F.R.D. 517, 521 (D. Md. 1997) (denying a motion to amend submitted after the defendant filed its motion for summary judgment and "exposed the flaws in [the plaintiff's] case"); *Fortsmann v. Culp*, 114 F.R.D. 83, 87 (M.D.N.C. 1987) ("To allow plaintiff to amend after defendants have made a successful dispositive motion prejudices defendants.").

Here, the plaintiffs knew about Ms. Davis for well over a year before they filed their present request to amend the complaint. Ms. Davis filed her consent to sue on February 13, 2009, and the plaintiffs have had numerous opportunities to add her as a named plaintiff since that date. Just four months after Ms. Davis filed her consent to sue, the plaintiffs requested leave to file their first amended complaint, yet failed to include a request to add Ms. Davis as a named plaintiff. Likewise, after the court certified the collective action on August 26, 2009, the plaintiffs were on notice that Ms. Davis did not qualify as a member of the collective action class. The plaintiffs again failed to request to add Ms. Davis as a named party. Instead, the plaintiffs waited for nearly 14 months, until after the court granted Aerotek's motion for summary judgment against a different named plaintiff in this case, Janel Kleinpeter.

The plaintiffs' request to redefine the class certified by the court also would prejudice the defendant. The plaintiffs wish to expand the collective action class from the Professional and

Commercial Divisions of the Charlotte and Huntsville Aerotek offices to include all seven divisions in those offices. The plaintiffs support their argument with alleged new evidence obtained through the notice and opt-in form sent to potential class members on December 19, 2009, mainly the declaration of Mr. Rickard.[2] Mr. Rickard, however, was employed in Aerotek's Professional Division, which is already included in the certified class. (*See* Rickard Decl. ¶ 2). The plaintiffs also offer the declaration of Ms. Davis, who worked in the Engineering Division of Aerotek's Charlotte office. (*See* Davis Decl. ¶ 3). As discussed above, however, Ms. Davis's declaration does not constitute new evidence. The plaintiffs had access to Ms. Davis almost six months prior to the class certification hearing conducted on August 11, 2009. They could have introduced Ms. Davis's evidence at that time, but failed to do so. The plaintiffs instead waited until eight months after the court's order granting a limited collective action certification and until after the plaintiffs themselves sent out notice and opt-in forms to potential class members to introduce Ms. Davis's declaration as evidence supporting redefinition of the class. Moreover, to allow the plaintiffs to redefine the class at this point could require a new round of briefing regarding proper certification and notice and result in even further delay of proceedings. Accordingly, the plaintiffs' request to add Ms. Davis and to redefine the class will be denied.

    B.    *Motion for Partial Summary Judgment*

On March 30, 2010, the court granted Aerotek's motion for summary judgment on the misclassification claims of plaintiff Janel Kleinpeter. Aerotek now moves for partial summary judgment on the misclassification claims of Mr. Andrade, Mr. Delodder, Ms. McBride, Ms.

---

[2] The plaintiffs also rely on evidence from Janel Kleinpeter's deposition to support their request for redefinition of the class. The court already considered Ms. Kleinpeter's deposition during the initial class certification

Cameron, and Ms. Anstiss. For the same reasons the court granted Aerotek's motion for summary judgment on Ms. Kleinpeter's misclassification claims, the court will grant Aerotek's motion for summary judgment on these plaintiffs' misclassification claims.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

---

determination, however, and choose not to expand the class beyond the Professional and Commercial Divisions. Therefore, the court will not reconsider Ms. Kleinpeter's deposition as new evidence.

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Pursuant to the FLSA, employees must be paid time and a half for work over forty hours per week. 29 U.S.C. § 207(a)(1). Certain employees are exempt from this requirement, however, including those persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An employer bears the burden of proving, by clear and convincing evidence, that an employee's job is exempted. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 (4th Cir. 2009). Policy dictates that FLSA exemptions be narrowly construed against the employer, and their application should be "limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit." *Id.* at 692 (internal quotation marks and citation omitted, and alteration in original).

Just as in Aerotek's motion for summary judgment regarding Ms. Kleinpeter's claims, the principal dispute between the parties in this motion for partial summary judgment is whether the plaintiffs were employed in an administrative capacity. Subject to the administrative exemption is any employee: (1) who is compensated on a salary or fee basis of at least $455 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Of the three factors used to determine whether an employee falls under the administrative exemption,[3] the parties dispute only whether the plaintiffs' work as Recruiters was directly related to the management or general

---

[3] The court engaged in an extensive discussion of the legal standard used to determine whether an employee falls under the administrative exemption in its Memorandum Opinion dated March 30, 2010. (*See* Docket Entry No. 97 at 8-9). For the sake of brevity, that discussion will not be repeated here.

business operations of Aerotek or its customers and whether the plaintiffs exercised discretion and judgment on matters of significance.

### 1. *Work Directly Related to Management or Business Operations*

In granting summary judgment to Aerotek on Ms. Kleinpeter's claims, the court held that Ms. Kleinpeter's work as a Recruiter was directly related to the management or business operations of Aerotek's customers. (*See* Docket Entry No. 97 at 10-12). The plaintiffs have presented no persuasive reason to change that conclusion. As noted in the earlier opinion, dated March 30, 2010, the Department of Labor ("DOL") concluded in a 2005 opinion letter that a staffing manager at a temporary staffing agency did "perform work in the functional areas of personnel management, human resources and labor relations" by "recruiting, hiring and managing the temporary labor pool of [the agency's] clients" and, therefore, met the requirement of performing work "directly related to the management or general business operations of the employer's clients." Dep't of Labor Op. Ltr., 2005 WL 3308616 (Oct. 25, 2005); *see also* Dep't of Labor Op. Ltr., 2000 WL 34444341 (Dec. 8, 2000) (advising that university technical recruiters who screened, tested and interviewed applicants for employment, and made personnel recommendations to hiring managers, were engaged in work directly related to management policies or business operations of their employer). Other courts have found that employees in a recruiting or staffing position perform work directly related to the management or business operations of their employers or their employers' clients. *See, e.g.*, *Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816, 824 (E.D. Pa. 2006) (holding that the job of supervisor at a provider of in-home nurses who "matched nurses to patients" and was involved in "casemanaging to ensure that the employee retains a positive relationship with the client" was directly related to the

management or business operations of the employer or its clients); *Hudkins v. Maxim Healthcare Servs.*, 39 F. Supp. 2d 1349, 1350 (M.D. Fla. 1998) (holding that the primary duty of a recruiter at a company that placed nurses in hospitals "was directly related to the Defendant's general business operation").[4]

While working as Recruiters, the plaintiffs developed recruiting strategies,[5] interviewed candidates,[6] negotiated pay for candidates,[7] assisted in managing contractors once they were hired,[8] and communicated directly with Aerotek's clients.[9] The performance of these duties places the plaintiffs squarely within the DOL's interpretation of "business operations."[10] Accordingly, the court finds that the plaintiffs performed duties directly related to the business operations of Aerotek's clients when they worked as Recruiters, and therefore fit within this element of the administrative exemption test.

---

[4] *See* Docket Entry No. 97 at 10-11.
[5] *See, e.g.*, Andrade Dep. 257:24-259:13 (maintained relationship with industry contacts to develop leads on who might want to work with Aerotek in the future); McBride Dep., 126:10-22 (taking it upon herself to reach out to an unemployment office to develop new recruiting leads); Anstiss Dep. 189:1-190:22 (initiated contacts with technical schools to develop a candidate pool for the future); DeLodder Dep. 193:2-5; 105:16-106:1 (admitting that one of his duties was to develop recruiting strategies for Aerotek and to network with industry contacts on behalf of Aerotek).
[6] *See, e.g.*, Andrade Dep. 110:2-112:17 (evaluating candidates in-person to ensure that they would be a good fit for a client); McBride Dep. 86: 6-12 ( job included evaluating candidate's strengths compared with clients' requirements through screening and interviewing the candidate); Anstiss Dep. 145:16-146:22 (same); DeLodder Dep. 115:5-116:2 (same).
[7] *See, e.g.*, Andrade Dep. 239:23-240:19 (negotiating with a candidate to convince him to accept a lower salary for a position with a client); DeLodder Dep. 133:10-134:24 (same).
[8] *See, e.g.*, Andrade Dep. 249:24-250:17 (managed contractors when problems arose, administered performance counseling and coaching, and disciplined and fired contractors when necessary); McBride Dep. 230:11-231:1 (provided performance feedback to contractors and fired contractors on behalf of clients).
[9] *See, e.g.*, Andrade Resume (Def.'s Ex. B3); Andrade Dep. 70:1-21 (took client calls from clients when managers were not in office and determined client's needs); McBride Resume (Def.'s Ex. B4); DeLodder Dep. 280:8-19 (sent resumes directly to clients).
[10] The court previously addressed the plaintiffs' argument regarding the administrative/production dichotomy described in 29 C.F.R. § 541.201(a). (*See* Docket Entry No. 97 at 11 n. 7). As in Ms. Kleinpeter's case, the remaining named plaintiffs provided administrative human resource services to Aerotek's clients, they did not produce anything. Thus, the administrative/production dichotomy supports the court's analysis. (*See id.*).

## 2. *Work Requiring Discretion and Independent Judgment*

The DOL's interpretive regulations explain that, generally, the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The DOL has explained that human resource managers who "formulate, interpret or implement employment policies . . . generally meet the duties requirements for the administrative exemption. However, personnel clerks who 'screen' applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not." 29 C.F.R. § 541.203(e). Whether a recruiter exercises discretion and independent judgment within the meaning of the regulation depends "on the amount of selectivity exercised in matching persons seeking employment with the requirements of the job opening and in deciding which employee to send to any particular employer for consideration, as opposed to referring to the employer several prospects who generally meet the qualifications for the job." Dep't of Labor Op. Ltr. 2005 WL 3308616; *accord* Dep't of Labor Op. Ltr. 2000 WL 34444341.

Here, the plaintiffs had considerable discretion in selecting eligible candidates based upon a client's needs, even if they did not have the power to make the ultimate decision on which candidate would get hired. *See* 29 C.F.R 541.202(c); *West v. Anne Arundel County*, 137 F.3d 752, 764 (4th Cir. 1998) (explaining that the "fact that some recommendations made by [an employee] are subject to review by superior officers is no bar to application of the administrative exemption."). The plaintiffs did not simply screen applicants for minimum qualifications; rather, they developed their own individual recruiting strategies, conducted personal interviews with potential candidates, and assisted candidates with drafting resumes and preparing for job

interviews with clients.  Once a contractor was hired, the plaintiffs also used discretion to manage and counsel a contractor when problems arose.  Accordingly, the plaintiffs fit within the third element of the FLSA's administrative exemption.

Because Aerotek has shown by clear and convincing evidence that the plaintiffs fit within the FLSA's administrative exemption to the requirement for overtime pay, the defendant's motion for partial summary judgment will be granted.  Accordingly, the court will deny the plaintiff's cross-motion for summary judgment on the same issue.

## **Conclusion**

For the foregoing reasons, the court will grant in part and deny in part the plaintiffs' motion for leave to file a second amended complaint and will grant the defendant's motion for partial summary judgment with respect to the misclassification claims of Mr. Andrade, Mr. Delodder, Ms. McBride, Ms. Cameron, and Ms. Anstiss.  A separate Order follows.


November  5, 2010                                        /s/
Date                                                     Catherine C. Blake
                                                         United States District Judge