**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

_____

**DAVID ANDRADE, JANEL KLEINPETER, RYAN**
**DeLODDER, JULIA McBRIDE, BOBBI CAMERON,**
**STEPHANIE ANSTISS, LAURA KEIDEL and SEAN**
**RICKARD,** Individually and on Behalf of All Others
Similarly Situated, as Class Representatives,

|  | Case No.: |
|---|---|
|  | 1:08-cv-02668-CCB |

                                        Plaintiffs,

            -against-

**AEROTEK, INC.,**

                                        Defendant.


_____



**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO AEROTEK'S**
**OPPOSITION AND IN FURTHER SUPPORT OF THEIR MOTION FOR <u>AN</u>**
**<u>AWARD OF STATUTORY ATTORNEY'S FEES AND COSTS</u>**

## PRELIMINARY STATEMENT

AEROTEK argues Plaintiffs are only entitled to fees associated with time and labor spent litigating the partially successful "off-the-clock" claims. AEROTEK cites the purported fees and costs related to "off-the-clock" claims from Exhibits A and B of Plaintiffs' Motion and calculates that Plaintiffs are entitled to no more than **$51,985.25** in reasonable attorney's fees and **$48.00** in costs; which amounts equal **8%** of the claimed attorney's fees of **$621,726.00** and **.019 %** of claimed costs of **$24,752**.  A reduction of plaintiffs' fees and costs, to the extent urged by AEROTEK would be unprecedented in the 4th Circuit.  Such a reduction is neither supported by the facts nor law in this case.

As will hereinafter be described, AEROTEK has omitted critical information and legal considerations in its analysis, which has resulted in skewed, distorted and erroneous calculations which will deprive plaintiffs of an award of costs and attorney's fees to which they are rightfully entitled in this litigation.

## ARGUMENT

## POINT I.    A PARTY ADVOCATING THE REDUCTION OF THE LODESTAR AMOUNT BEARS THE BURDEN OF PROOF

Plaintiffs are fully cognizant of the fact that this court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party.  *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  In determining whether the fee request is excessive in light of particular categorical contentions raised by AEROTEK, and in setting the amount of any reduction, this court will inevitably be required to engage in a fair amount of "judgment calling" based upon its

2

experience with the case and its general experience as to how much time, effort and expense this case required.

Parenthetically, the Court is advised that throughout this litigation, AEROTEK never requested that Plaintiffs submit quarterly statements showing the amount of time spent on the case and/or the total value of the time.  Pursuant to the Local Rules, APPENDIX B, Rules and Guidelines for Determining Attorneys' Fees, Section 1 (c), footnote 3, "Opposing counsel may not seek a denial or reduction of fees from the court if she did not first request that such statements be provided."  We also note that a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified.  *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 118 (3d Cir.1976).  We submit that AEROTEK has failed to meet that burden here.

The hourly rate charged consistent with the prevailing market rate, multiplied by the number of hours spent, equals the "lodestar" figure that is presumed to be reasonable.  *See, e.g., United States Football League, et al. v. Nat'l Football League,* 887 F.2d 408, 413 (1989), *cert. denied,* 493 U.S. 1071 (1990).  While the lodestar is presumed to be the reasonable fee, "[t]he district court has the discretion to make certain adjustments to the lodestar." *Rode,* 892 F.2d at 1183.  However, "a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers)."  *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.1989).

While the fee applicant is under a primary duty to provide sufficient detail to justify a requested attorney's fee award, the party or parties opposing such an award have a concomitant duty to specify with particularity the basis for their objections.  To allow this Court to evaluate the objection fairly, this requires sufficiently detailed references to the challenged time entries and explanation for the basis of the challenge.  *See Stacy,* 845 F.Supp. at 1145 (bare assertions by the defendants that certain requests were seemingly excessive are insufficient grounds to disallow time properly spent).

**POINT II.    FEES MAY BE AWARDED FOR UNSUCCESSFUL AS WELL AS SUCCESSFUL CLAIMS WHERE THEY ARE INEXTRICABLY INTERTWINED AND INVOLVE A COMMON CORE OF FACTS OR ARE BASED ON RELATED LEGAL THEORIES**

The calculation of the lodestar figure and subsequent adjustment is made more complicated when the plaintiff has prevailed, but was not successful on every claim. *Brodziak,* 145 F.3d at 197.  When a plaintiff achieves only partial victory, hours billed for handling the case as a whole may be excessive in proportion to the achieved success.  *Id.* at 196.  The Fourth Circuit has explained that in such circumstances "the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id.* at 197.  If the claims involve a "common core of facts," it is appropriate for counsel to devote time to the case as a whole, making it difficult to divide the "hours expended on a claim-by-claim basis." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983)).  When this is the case, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435.

In comparing plaintiffs' work performed in connection with Plaintiffs' nationwide FLSA misclassification claims (on behalf of Recruiters and Account Recruiting Managers)

4

with the "off-the-clock" claims of Recruiter-Trainees, it is evident that a substantial amount

of the time spent on factual investigation, discovery, document review, depositions, motions

and legal analysis in the one case would have been essential in the other.  The *Hensley* Court

explicitly rejected the notion that a court may calculate an award of attorneys' fees by means

of a purely mathematical comparison between the number of claims pressed and the number

prevailed upon, observing that "[s]uch a ratio provides little aid in determining what is a

reasonable fee in light of all the relevant factors."  *Hensley,* 461 U.S. at 435 n. 11.  Rather,

the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are

related to those on which he did not.  When successful claims are unrelated to unsuccessful

claims, it is not appropriate to award fees for the latter.  *See id.* at 435.  When, however, all

claims "involve a common core of facts ... [m]uch of counsel's time will be devoted

generally to the litigation as a whole, making it difficult to divide the hours expended on a

claim-by-claim basis."  *Id.; see Johnson,* 974 F.2d at 1419 (remanding for reconsideration

of a fee award when the district court may have reduced the award to account for the fact

that the plaintiff prevailed on only one of three claims, when all of the claims arose from the

same operative facts and the plaintiff achieved a sizeable verdict); *see also Hensley,* 461

U.S. at 435 (explaining that "[l]itigants in good faith may raise alternative legal grounds for

a desired outcome, and the court's rejection of or failure to reach certain grounds is not a

sufficient reason for reducing a fee.").  *Brodziak v. Runyon*, 145 F.3d 194 (4th Circ.1998).

In some cases, like here, "[w]here successful and unsuccessful claims share a common core

of facts and related legal theories, it may be impossible to parse out the hours spent

litigating the successful claims from the unsuccessful claims."  *Butler,* 2006 WL 1806412 at

*11 (citing *Hensley,* 461 U.S. at 435).  In short, the claims share a common core of facts and legal issues; counsel's time spent pursuing "alternative ways to obtain relief" is therefore compensable.  *United States Football League v. NFL,* 887 F.2d 408, 414 (2d Cir.1989) (affirming award of fees allowing compensation for time on all claims where claims involved a "common core of facts" "based on related legal theories" even though only one claim was successful; approving district court's reduction of overall fee award to account for plaintiff's lack of success) (quoting *Hensley,* 461 U.S. at 435); *see also  Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999) (noting that fees may be awarded for unsuccessful as well as successful claims where they are " 'inextricably intertwined' " and " 'involve a common core of facts or are based on related legal theories' ") (citing *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996) (citation omitted).

## POINT III.   ATTORNEY'S HOURLY FEES SOUGHT HEREIN ARE CONSISTENT WITH APPENDIX B TO THE COURT'S LOCAL RULES AND THE LAFFEY MATRIX

The fifth *Johnson* factor requires the Court to consider the customary fee for like work.  In making this determination, the court should consider various information, including affidavits, recent fee awards in comparable cases and "specific evidence of counsel's actual billing practice or other evidence of actual rates which counsel can command in the market."  *Buffington v. Baltimore County,* 913 F.2d 113, 130 (4th Cir.1990), *cert. denied,* 499 U.S. 906 (1991).  This Court has the discretion to make factual findings based on personal knowledge of the prevailing rates in the relevant market.  *See Rum Creek Coal Sales,* 31 F.3d at 179.

In the District of Maryland, a district judge's determination of a reasonable rate is guided by Appendix B to the Court's Local Rules, which sets out non-binding guidelines regarding hourly rates. *Poole v. Textron, Inc.,* 192 F.R.D. 494, 509 (D.Md.2000) (noting that Appendix B to the Local Rules "provide[s] a presumptively reasonable range of hourly rates in civil rights and discrimination cases"). *Hylind v. Xerox Corp.,* 2011 WL 806419 (D.Md. 2011); *Moore v. Sebelius,* 2010 WL 1881753(D.Md.,2010) wherein this Court awarded attorney's fees based, in significant part, on Appendix B, because the fee applicant did not file any affidavits as to customary rates in the relevant legal community.  It should also be noted that defendant has not objected to the rates charged by plaintiff's attorneys.

Pursuant to the Local Rules of the United States District Court for the District of Maryland, Appendix B, ¶ 1(e) Plaintiffs have requested production of all AEROTEK billing records maintained by Morgan, Lewis & Bockius, LLP in connection with the defense of the instant litigation.  This request has been denied.  In *Stastny v. S. Bell Tel. & Tel. Co.,* 77 F.R.D. 662, 663 (W.D.N.C.1978) the court held that an opposing attorneys' fees was probative in determining whether claimant's requested attorneys' fees were reasonable because both sides must perform similar work on the case.  Also see, *Smith v. Continental Cas. Co.*, 289 F.Supp.2d 706 (D.Md. 2003).

The Laffey Matrix is also used as a guideline for reasonable attorney fees in the Washington/Baltimore area.  *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. E. Sign Tech, LLC,* 2006 U.S. Dist. LEXIS 72345, at *7 (E.D.Va.2006) (using the *Laffey* matrix as evidence of reasonableness).  The matrix is hosted on the website of the United States Attorney's Office for the District of Columbia. *See* http:// www.justice.gov/usao/

dc/Divisions/Civil_Division/Laffey_Matrix_8.html.  The rates are adjusted for cost of living

and are based on rates found reasonable in *Laffey v. Nw. Airlines,* 746 F.2d 4, 24–25

(D.C.Cir.1985), *overruled in part on other grounds by Save Our Cumberland Mountains,*

*Inc. v. Hodel,* 857 F.2d 1516, 1524 (D.C.Cir.1988).

Recent decisions of District Court have looked to three indices in considering

attorney-fee reasonableness.  In *IIF Data Solutions,* this Court reviewed two versions of the

"Laffey Matrix," one published by the United States Attorney's Office for the District of

Columbia and one known as the "Adjusted Laffey Matrix," as well as a table of fees

outlined in *Grissom v. The Mills Corp.,* 549 F.3d 313 (4th Cir.2008), which it dubbed the

"Grissom Table."  *IIF Data Solutions,* 2010 WL 1726767, at *8–9. "[T]he Laffey matrix is

a useful starting point to determine fees, not a required referent." *Newport News*

*Shipbuilding and Dry Dock Co. v. Holiday,* 591 F.3d 219, 229 n. 11 (4th Cir.2009).

### Unadjusted Laffey Matrix

| Year | 03–04 | 04–05 | 05–06 | 06–07 | 07–08 | 08–09 | 09–10 | 10–11 |
|---|---|---|---|---|---|---|---|---|
| *Experience* | | | | *Fees* | | | | |
| 20⇨ years | $380 | $390 | $405 | $425 | $440 | $465 | $465 | $475 |
| 11–19 years | $335 | $345 | $360 | $375 | $390 | $410 | $410 | $420 |
| 8–10 years | $270 | $280 | $290 | $305 | $315 | $330 | $330 | $335 |
| 4–7 years | $220 | $225 | $235 | $245 | $255 | $270 | $270 | $275 |
| 1–3 years | $180 | $185 | $195 | $205 | $215 | $225 | $225 | $230 |
| Paralegals & Law Clerks | $105 | $110 | $115 | $120 | $125 | $130 | $130 | $135 |

### Adjusted Laffey Matrix

| *Experience* | | | | |
|---|---|---|---|---|
| 1 to 3 Years | 4 to 7 Years | 8–10 Years | 11–19 | 20⇨ Years |

|  |  |  | Years |  |  |
| Year |  | Fees |  |  |  |
| --- | --- | --- | --- | --- | --- |
| 6/01/10–5/31/11 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09–5/31/10 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08–5/31/09 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07–5/31/08 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06–5/31/07 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05–5/31/06 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04–5/31/05 | $239 | $293 | $423 | $476 | $574 |

As of April 1, 2011, according to the Unadjusted Laffey Matrix, the hourly rate for an attorney with 20 years of experience is $475.00, while the Adjusted Laffey Matrix puts that figure at $709.00.  The *Grissom Table*, however, puts the rate for an attorney with 19 years experience at $380.00.

*Khair v. Countrywide Home Loans, Inc.,* 2011 WL 1304916 (E.D.Va.2011)

Grissom Table

| Title | Years Experience | Hourly Rate |
| --- | --- | --- |
| Partner | 18–19⇐ | $335.00–380.00 |
| Associate | 6–7 | $250.00 |
| Associate | 5–6 | $250.00 |
| Associate | 2–3 | $200.00 |
| Associate | 1 | $180.00 |

Plaintiffs' attorneys respectfully submit that they have met their burden of showing that they expended a reasonable amount of time representing plaintiffs in their case against

AEROTEK. *J.P. v. County Sch. Bd. of Hanover Cty,* 2007 WL 840090
(E.D.Va.2007)(finding that plaintiffs met their burden by "supplying documentation which
'reflects reliable contemporaneous recordation of time spent on legal tasks that are described
with reasonable particularity, sufficient to permit the court to weigh the hours claimed and
exclude hours that were not 'reasonably expended.' ") (quoting *Guidry v. Clare,* 442
F.Supp.2d 282, 294 (E.D.Va.2006)). Plaintiffs' counsel has submitted documentation
identifying the number of hours spent on specific tasks and generally described the tasks
with sufficient detail.

For purposes of this motion, plaintiffs have continued to exercise billing judgment
and already reduced the basic lodestar by **53%, to $ 287,909.00**.  (See Exhibit "A").  This
adjusted calculation was performed with the basic premise that there would be an
understated amount of time actually spent on the litigation and all matters extraneous to the
"off-the-clock " claims  would be omitted.  "A request for attorney's fees should not result in
a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."
*Hensley v. Eckerhart,* 461 U.S. 424, 437.

Here, billed hours (1) attributable solely to the nationwide misclassification claims;
(2) entries related to the filing of the initial Complaint; (3) entries related to the filing of a
North Carolina state wage and hour claims; (4) entries  related to potential litigation
regarding enforcement of Plaintiffs' contractual obligations to Aerotek; (5) entries related to
depositions not involving "off-the-clock" claims; (6) entries related to an untimely Fourth
Circuit appeal on the misclassification claims have been deleted and (7) entries related to fee
petition preparation have been DELETED.

Plaintiffs have re-calculated attorney's fees, specifically eliminating and/or reducing phased billing, as follows:

1. **Totally eliminating** Format Litigation **Phase i,**(Case development, background investigation, file set up, routine client and co-counsel communications) originally billed in the amount of **$26, 512.50**, for case development; background investigation, initial investigation; file set up; preparation of budgets; routine communications with clients; co-counsel, etc.

2.  **Reducing** original billing for Format Litigation **Phase ii** (Pleadings) in the amount of **from $25,718.00 to $1,125.00**, (**96% reduction**) by eliminating all billing related to the aborted North Carolina state wage and hour litigation and limiting the New York S.D.N.Y billing to the preparation and drafting of the S.D.N.Y FLSA/NYS Wage and Hour Complaint. (see Exhibit "A"); the content of which was used in all respects, in connection with multiple amended complaints, related to "off-the-clock claims."

3. **Reducing** original billing for Format Litigation **Phase iii** (Interrogatories; Document Production; Other written discovery) **$34,216.00 (23%) from the amount of $151,073 to $116,857.00**.  (See Exhibit "A") by eliminating written correspondence, emails, telephone calls; receipt/scan/upload and intra-office discovery conferences.  It is submitted that interrogatories; document production; and other written discovery would have been substantially the same if the sole claims brought were "off-the-clock."  Document production was broadly concerned with the personnel records, payroll records, training materials and time records of only the named plaintiffs.

4.      **Reducing** original billing for Format Litigation **Phase iv** (Depositions and

Deposition preparation) by **$96,063.00 ( 58%) from the amount of $165,510.00 to**

**$69,447.00** (See Exhibit "A") by eliminating billing relating to written correspondence,

emails, telephone calls; document receipt/scan/upload and intra-office discovery

conferences; the preparation, conduct and reading/digesting of depositions of Mary Ann

McNeil, John Flannigan, Kevin Fujimoto, Jerel Eubanks, Ryan DeLodder and David

Andrade; all such billed items related to national misclassification claims.  We submit that

under any circumstance, each of the seven (7) named plaintiffs would have been deposed by

AEROTEK.  In fact, every plaintiff was questioned about "off-the-clock" work and time

keeping practices at their deposition.  As such, it was minimally  necessary to confer with

each plaintiff prior to their respective depositions; necessary for the plaintiffs' attorneys to

review all applicable legal papers and documents; travel to and from the depositions

conducted in Washington, D.C.; attend and defend each plaintiff at their depositions; pay for

each transcript of deposition; read, digest and report on each deposition; confer with each

client in connection with their legal rights in connection with each transcript of deposition.

In addition, the testimony of Chris DeAngelis, the NC District Branch Officer who

implemented the illegal "off-the-clock" practices for Recruiter-Trainees was critical and

essential.

5.      **Reducing** original billing for Format Litigation **Phase v** (Motion Practice) by

**$111,424.00 (53%) from the amount of $211,903.00 to $100,479.00** (See Exhibit "A") by

**eliminating/reducing** billing relating to Motions in connection with (1) pro hac applications

to the NC Court; (2) S.D.N.Y. motion to dismiss for improper venue; (3) 52% of the

collective class certification motion attributable to the national misclassification ;(4)

summary judgment on the issue of exemption. It must be emphasized that Plaintiffs were

successful in defeating AEROTEK'S opposition to conditional collective certification for

the NC class of Recruiter –Trainees.  This was not achieved in a vacuum and was the result

of the legal skills and tenacity of plaintiffs' counsel.  Virtually all of the discovery

conducted prior to the certification was directly and/or indirectly related to the common core

of facts and legal issues that were shared with the misclassification claim.

6.    **Totally eliminating** Format Litigation Phase x (Fee Petition preparation**),** originally

billed in the amount of **$26,280.00**, despite the fact that courts consistently have interpreted

fee shifting statutes, to provide for reasonable fees for all time spent in the vindication of

statutory or constitutional rights, including fees related to the preparation and litigation of

motions for attorney's fees under the Act. The 4th Circuit, in *Kerns v. Consolidation Coal*

*Co.,*247 F.3d 133 (citing *Anderson v. Director, OWCP,* 91 F.3d 1322 (9th Cir.1996)),

decided that, because it has been held that compensation is available for the cost of pursuing

a petition for attorney's fees under the Civil Rights Act pursuant to 42 U.S.C. § 1988, and

because the Supreme Court had indicated that federal fee-shifting statutes should be

construed uniformly, *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992), and should

also compensate for time spent pursuing attorney fees.  The same rationale is applicable to

claims under the FLSA.

**POINT IV.   A PRESUMPTIVELY CORRECT 'LODESTAR' FIGURE**
**              SHOULD NOT BE REDUCED SIMPLY BECAUSE A**
**              PLAINTIFF RECOVERED A LOW DAMAGE AWARD**

The United States Supreme Court and the Fourth Circuit have explained that

although the degree of a party's success is " 'the most critical factor' " in determining a

reasonable fee award, a court's analysis of that factor should not be limited to "a purely

mathematical comparison between the number of claims pressed and the number prevailed

upon." *Brodziak v. Runyon,* 145 F.3d 194, 196-97 (4th Cir.1998) (quoting *Hensley,* 461

U.S. at 435 n. 11, 436, 103 S.Ct. 1933). The Fourth Circuit has indicated that it will "not

reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in

proportion to the damages' shortfall." *Nigh v. Koons Buick Pontiac GMC, Inc.,* 478 F.3d

183, 190 (4th Cir.2007).

> Rather, the appropriate inquiry concerns whether the claims on which the
> plaintiff prevailed are related to those on which he did not. When successful
> claims are unrelated to unsuccessful claims, it is not appropriate to award fees
> for the latter. When, however, all claims "involve a common core of facts ...
> [m]uch of counsel's time will be devoted generally to the litigation as a whole,
> making it difficult to divide the hours expended on a claim-by-claim basis.

*Brodziak,* 145 F.3d at 197 (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933) (internal

citation omitted).  In such cases, the Supreme Court further explained that "[s]uch a lawsuit

cannot be viewed as a series of discrete claims," and that "[w]here a plaintiff has obtained

excellent results, his attorney should recover a fully compensatory fee....  In these

circumstances the fee award should not be reduced simply because the plaintiff failed to

prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct.

1933; *accord Brodziak,* 145 F.3d at 196; *Cooper v. Dyke,* 814 F.2d 941, 950-51 (4th

Cir.1987); *Saleh v. Moore,* 95 F.Supp.2d 555, 576-77 (E.D.Va.2000).

A presumptively correct 'lodestar' figure should not be reduced simply because a

plaintiff recovered a low damage award." *Cowan v. Prudential Ins. Co. of America,* 935

F.2d 522, 526 (2d Cir.1991).  The size of the damage award carries even less weight here

given that the case arose under the fee-shifting provision of the FLSA.  *See Quaratino v.*

*Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir.1999) ("Congress enacted fee-shifting in civil

rights litigation precisely because the expected monetary recovery in many cases was too

small to attract effective legal representation."); *Fegley v. Higgins,* 19 F.3d 1126, 1134-35

(6th Cir.1994) ("The purpose of the FLSA attorney fees provision is to insure effective

access to the judicial process by providing attorney fees for prevailing plaintiffs with wage

and hour grievances.  Courts should not place an undue emphasis on the amount of the

plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of

congressionally identified policies and rights." (alteration in original) (internal quotation

marks and citations omitted)).  Thus, by subjectively labeling the employees' success

"modest" and failing to look at the success of the employees' claims "in comparison to the

scope of the litigation as a whole," *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933, the court

abused its discretion.

Applying the foregoing legal rationale, is *Castel v. Advantis Real Estate Services Co*.,

2008 WL 3348774 (E.D.Va.2008) arising out of claims by seven (7) individuals for

overtime compensation that Plaintiffs allege was due under the FLSA.  Plaintiffs filed the

original Complaint on September 26, 2007, and the Amended Complaint on October 5,

2007.  On October 24, 2007, Defendant filed its Answer to the Complaint.  On May 7, 2008,

the parties submitted an Agreed Order of dismissal in part, that all claims made by all

Plaintiffs in this action are dismissed with prejudice as settled, with the sole exception of

any claim for an award of attorney's fees and costs.  In their fee petition, counsel requested

$161,439.00 in attorney's fees and $7,114.71 in costs.  Defendant argued that to the extent that this Court decides to award any fees, such fees and costs should be drastically reduced to comport with both the limited amount in controversy and limited results; i.e., Defendant argued that where $28,000 is a best case recovery based on governing circuit precedent, an expenditure of over $160,000 is inappropriate based not only on the Plaintiffs' lack of success in relation to their settlement demand, but also because Plaintiffs did not obtain an award of one-and-one-half time damages rather than half-time.  In awarding a sum of $139,668.00 in attorneys' fees, the court "finds that the award of attorney fees encourages the vindication of employees' rights and notes that a substantial reduction based on the amount of damages awarded to plaintiffs would serve as an incredible disincentive for attorneys to accept FLSA cases."

In addition, the Court found it relevant that the purpose of the FLSA attorney fee provision is "to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins,* 19 F.3d 1126 (6th Cir.1994).  Moreover, many courts have awarded large awards of attorney's fees after a vindication of plaintiff's rights through relatively small recoveries.  *See e.g. Almenarez, et al. v. J.T.T, Enterprises Corp*., et al., 2010 WL 3385362 (D. Md. 2010) ($84,058 attorney fee award based on three out of eight plaintiffs obtaining judgments totaling $3,300 before liquidated damages; *Rivera v. Riverside,* 763 F.2d 1580, 1581-83 (9th Cir.1985) (awarding $245,456.25 in fees for obtaining a $33,350.00 judgment); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (awarding $160,000 in fees for obtaining a $33,000 judgment); *Morris v. Eversley,* 343 F.Supp.2d 234, 248 (S.D.N.Y.2004) (awarding

reasonable attorneys' fees of $154,900 where plaintiff was awarded $16,000 in

compensatory and punitive damages).  In order to vindicate congressional identified policies

and rights, a Court should not place undue emphasis on the amount of plaintiff's recovery.

*See Fegley,* 19 F.3d at 1134-35.

A prime illustration of the foregoing is the often cited case of *U.S. Football League v.*

*National Football League*, 887 F.2d 408 (2d Circ.1989) wherein the USFL brought suit in

the United States District Court for the Southern District of New York against the NFL and

its Commissioner Alvin R. Rozelle, seeking declaratory and injunctive relief in addition to

damages resulting from the NFL's alleged violations of sections 1 and 2 of the Sherman

Anti-Trust Act, 15 U.S.C. §§ 1, 2 (1982) (the Sherman Act) and common law.  After a

lengthy trial, the jury found that the NFL had willfully acquired or maintained monopoly

power in the United States major league professional football market.  Further, the jury

found that the NFL's actual monopolization of the major league professional football market

had caused injury to the USFL's business or property in violation of section 2 of the

Sherman Act.  The jury awarded the USFL damages of $1.00, which the court trebled to

$3.00.  The USFL was not successful on all of its other claims.

The USFL then petitioned the district court, pursuant to section 4 of the Clayton Act,

for an attorney's fee award of $7,662,709.13 and for an award of $62,220.92 for costs.  The

court observed that all of the USFL's claims involve a "common core of facts" and are

"based on related legal theories."  However, the USFL was successful on only one of its

claims.  The district court noted that the USFL exercised billing judgment and in recognition

of its limited success, the USFL had already reduced the basic lodestar by twenty percent.

According to the district court, the adjusted claimed amount was $7,662,702.13.  The USFL also pointed out that it had charged historic billing rates, instead of current rates, and that it had understated the time actually spent on the litigation.  It was determined that the district court properly exercised its discretion by taking into account the USFL's lack of success by reducing the overall attorney's fees award by a certain percentage, allowing compensation for time spent on all of the claims.

In summary, plaintiffs were granted conditional collective certification on the "off-the-clock " claims , but achieved only moderate success because of the failure of putative class members to opt-in.  Nevertheless, this case served important interests of the FLSA.  Moreover, counsel's representation was dedicated, diligent, and highly competent.  Thus, a substantial fee is appropriate. We respectfully submit that a reasonable fee is the "traditional lodestar" amount of $287,909.00 reduced by a maximum of 25 percent.

## POINT V.   REASONABLE EXPENSES ARE WARRANTED

Because "attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation," *Daly,* 790 F.2d at 1083, an award of fees may also include reasonable litigation expenses, *see Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988).  This refers to "those out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (internal citations and quotation marks omitted).

ATTACHED AS Exhibit "B" is an itemized amended schedule of costs, in the amount of $7,316.25, that were incurred in the course of this litigation and consistent with the reductions of lodestar described above.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion should be granted and (a) attorney's fees be awarded in the "traditional lodestar" amount of $287,909.00 reduced by a maximum of 25 percent and (b) costs awarded in the amount of $7,316,25.

Dated: April 18, 2011

Respectfully submitted,

 _/S/Steven Bennett Blau
Steven Bennett Blau
**BLAU, BROWN & LEONARD LLC**
224 W.30th Street, Suite 809
New York, New York 10001
(212) 725-7272
(212) 488-4848 Facsimile
sblau@bbpc-law.com

**THE RUBIN EMPLOYMENT LAW FIRM, P.C.**
James E. Rubin, Bar No. 15605
11 North Washington Street, Suite 520
Rockville, MD 20850
Telephone: (301) 760-7914
Facsimile: (301) 760-7234
jrubin@rubinemploymentlaw.com

*Attorneys for Plaintiffs and the Class*