IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID ANDRADE, et al.       :

      :

v.       :    Civil No. CCB-08-2668

      :

AEROTEK, INC.       :

## MEMORANDUM

Now pending is the plaintiffs' Motion for Attorney's Fees and Costs in this case involving violations of the Fair Labor Standards Act (FLSA). (ECF No. 125.) Also pending is the defendant's Motion for Leave to File Surreply in Further Support of Defendant's Opposition to Plaintiff's Motion for an Award of Statutory Attorney's Fees and Costs. (ECF No. 128.) The court will grant the defendant, Aerotek, leave to file its surreply. Having considered all motions before it, the court will grant the plaintiffs attorney's fees in the amount of $110,115.94 and costs in the amount of $1,087.96.

**Procedural History**

The plaintiffs first filed suit against Aerotek, Inc. and Allegis Group, Inc. in the Southern District of New York in July 2008. The suit alleged that Recruiter Trainees, Recruiters, and Account Recruiting Managers (ARMs) employed by the defendants were misclassified under the FLSA. The plaintiffs proposed a collective action class of certain current and former Aerotek employees on the issue of misclassification.[1] That same month, the plaintiffs filed a parallel suit

---

[1] In its motion for class certification, the plaintiffs defined the class as follows: "All current and former employees of AEROTEK who were employed as Recruiter-Trainees, Recruiters, and Recruiter Account

in North Carolina state court based on a state wage and hour claim, which they voluntarily dismissed shortly thereafter.

The New York case was transferred to the District of Maryland in October 2008, and Allegis Group, Inc. was dismissed as a defendant at that point. (ECF Nos. 12, 13.) Almost seven months of discovery ensued. During their depositions, four of the named plaintiffs claimed that while working as Recruiter Trainees for Aerotek, they falsified their time sheets to omit all hours in excess of 45 hours per week at the instruction of their local managers and were not paid for this "off-the-clock" work. (ECF No. 126, p. 4.) In response to that information, the plaintiffs sought leave to amend their complaint to redefine the class and add a sub-class of Recruiter Trainees who were not compensated for "off-the-clock" hours. (ECF No. 71.) The court granted the plaintiffs leave to amend their complaint in July 2009. (ECF No. 77.)

On August 11, 2009, the court heard oral argument regarding conditional class certification on both the misclassification and "off-the-clock" claims. On August 26, 2009, the court denied the plaintiffs' motion for certification of the collective action class consisting of allegedly misclassified Recruiters and ARMs on the grounds that the prospective class members were not sufficiently similarly situated. (ECF Nos. 89, 90.) With respect to the newly proposed class of Recruiter Trainees allegedly denied payment for "off-the-clock" work, the court denied nationwide notice, but granted conditional collective action certification to a narrower class consisting of Recruiter Trainees who had worked in two of Aerotek's offices during a specific three-year period. (*Id.*)

The court subsequently granted Aerotek's motion for summary judgment on the misclassification claims of one of the plaintiffs, Janel Kleinpeter, on the grounds that her position

---

Managers in the United States, during the applicable statutory period, who worked at least one (1) hour of overtime, and who were subjected to AEROTEK's misclassification of them as exempt from overtime and thereby not paid overtime premiums for their overtime work." (ECF No. 28.)

fit within FLSA's administrative exemption for overtime pay, as Aerotek contended.  (ECF Nos. 97, 98.)  The plaintiffs filed an appeal in the Fourth Circuit, which they voluntarily dismissed shortly thereafter because the appeal was premature, as Ms. Kleinpeter and several other plaintiffs still had claims pending before the district court.

In April 2010, the plaintiffs sought leave to file a second amended complaint redefining the class and adding three more plaintiffs.  (ECF No. 100.)  The court granted leave to add two of the three proposed plaintiffs, but denied leave to add the third proposed plaintiff and also denied leave to redefine the class at that stage of the litigation on the grounds that it would prejudice the defendant.  (ECF No. 116.)  The court also granted partial summary judgment on all the remaining plaintiffs' misclassification claims, finding once again that FLSA's administrative exemption for overtime pay applied to their positions.  (*Id*.)

After the court granted summary judgment on the plaintiffs' misclassification claims, Aerotek served a Rule 68 Offer of Judgment to the plaintiffs for their "off-the-clock" claims.  The Offer of Judgment provided a total of $13,940.08 in back pay for the eight plaintiffs.  The plaintiffs accepted the offer on February 11, 2011, and the court entered a judgment against Aerotek pursuant to Rule 68 on February 28, 2011.  (ECF Nos. 122, 124.)   The Offer of Judgment provided for "applicable prejudgment interest and reasonable attorney's fees and costs as determined by a fee petition to the Court, incurred up to the date this Offer of Judgment is served." (*Id.*)  The motions currently at issue pertain to the appropriate amount of those "reasonable attorney's fees and costs."

**Legal Standard**

In any action under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

3

costs of the action." 29 U.S.C. § 216(b). The payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory. "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

The first step in determining the reasonable attorney's fees is to calculate the lodestar – that is, "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888 (1984). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010). The Supreme Court had held that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* at 1673.

To assess the appropriate amount of attorney's fees in cases where some of the plaintiffs' claims prevail and others fail, the court must undertake a somewhat more complex inquiry. In such cases:

> [A] district court should first identify the number of hours reasonably expended on the litigation and multiply that number by a reasonable rate. The court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002) (internal citations omitted). The Supreme Court has noted that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v.*

4

*Eckerhart,* 461 U.S. 424, 440 (1983).  Otherwise stated, "[w]hen successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter.  When however, all claims 'involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (quoting *Henlsey*, 461 U.S. at 435) (internal citations omitted).  Thus, the court in this case must determine whether the plaintiffs' misclassification claims are sufficiently related to the "off-the-clock" claims to warrant full recovery by the plaintiffs or if the claims are so distinct that the plaintiffs are entitled to compensation only for hours strictly attributable to the "off-the-clock" claims.

**Background**

In their initial motion, the plaintiffs requested $621,726.00 in attorney's fees and $24,752.39 in costs.  (ECF No. 125.)  The plaintiffs submitted a record of hours billed by each attorney for specific tasks, as well as a record of costs and a supporting declaration by one of the plaintiffs' attorneys, Steven Bennett Blau.  (*Id.*, Exhs. A, B.)  The plaintiffs argued they are a "prevailing party" and noted that courts have rejected the notion that attorney's fees awards must be strictly proportional to the amount of recovery.

In its opposition to the motion, Aerotek characterized the plaintiffs' claim for fees and costs as "unjustified, unsupported, and completely unreasonable."  (ECF No. 126, p. 2).  Aerotek charged that the plaintiffs were "entirely unsuccessful as to their misclassification claims" and "substantially unsuccessful with respect to their 'off-the-clock' claims."  (*Id.*)  Specifically, Aerotek claimed the plaintiffs should omit all billable hours and costs pertaining to:

> (1) . . . their wholly unsuccessful nationwide misclassification claims; (2) . . . the improper filing of the initial Complaint (alleging solely the misclassification claims) in a court with no jurisdiction over this matter; (3) the improper filing of a North Carolina

5

state wage and hour claim; (4) unrelated potential litigation regarding enforcement of Plaintiffs' contractual obligations to Aerotek; (5) an untimely Fourth Circuit appeal on the misclassification claims; and (6) time related to the preparation of Plaintiffs' instant Motion after Defendant served the Offer of Judgment.

(*Id*. at 1-2.)  Aerotek conceded the plaintiffs are a "prevailing party" under the FLSA and therefore entitled to reasonable fees and costs, but *only* with respect to their "off-the-clock" claims.  Aerotek argued the unsuccessful misclassification claims were wholly unrelated to the "off-the-clock" claims on which the plaintiffs partially prevailed because they involved "entirely different legal theories, different operative facts, and different claimed damages." (*Id.* at 11.) Aerotek asserted that the appropriate total, based on hours billed and costs charged solely for the "off-the-clock" claims, should be $51,985.25 in attorney's fees and $48.00 in costs. (*Id.* at 18-19; *Id.*, Exh. L.)[2]  Furthermore, Aerotek argued, that figure also should be "significantly reduced based on the extremely limited overall success of the claims in this matter."  (*Id.* at 25.)

In their reply, the plaintiffs claimed the hours pertaining to the misclassification claims should not be excluded from the attorney's fees award because they were "inextricably intertwined" and shared a "common core of facts" with the successful "off-the-clock" claims. (ECF No. 127.)  The plaintiffs then proposed a new, reduced amount of attorney's fees and costs. The new total reflected the omission of hours:

> (1) attributable solely to the nationwide misclassification claims; (2) entries related to the filing of the initial Complaint; (3) entries related to the filing of a North Carolina state wage and hour claims; (4) entries related to potential litigation regarding enforcement of Plaintiffs' contractual obligations to Aerotek; (5) entries related to depositions not involving 'off-the-clock' claims; (6) entries related to an untimely Fourth Circuit appeal on the misclassification claims have been deleted and (7) entries related to fee petition preparation . . . .

---

[2] Aerotek does not object to the hourly rates charged by the plaintiffs in their fee petition.  (ECF No. 128, p. 8.)

6

(*Id*. at 10.)  The plaintiffs submitted a new itemization of fees and costs and requested that "attorney's fees be awarded in the 'traditional lodestar' amount of $287,909.00 reduced by a maximum of 25 percent and . . . costs awarded in the amount of $7,316.25." (*Id.* at 19).

## Discussion

With respect to the assessment of attorney's fees and costs, the court finds that the plaintiffs' claims are not so distinct that hours expended in pursuit of the misclassification claims can easily be separated from "off the clock" hours.  The elements of the two FLSA claims are different, but these are not "distinctly different claims for relief that are based on different facts and legal theories," as contemplated by *Hensley*.  461 U.S. at 434.  *Hensley* instructed courts to subtract plaintiffs' billable hours attributable to unsuccessful claims when they are "distinct *in all respects* from [the] successful claims." *Id.* at 440 (emphasis added).  In this case, the claims were not distinct in all respects.  For example, to pursue both claims, plaintiffs needed to develop facts about the defendant's pay schedules, time records, and hiring and supervision practices.  Moreover, discovery for the misclassification claim led directly to the development of the "off-the-clock" claim and certainly aided in the preparation and ultimate success of that claim.

In summary, where the plaintiffs' hours devoted solely to the misclassification claims can be identified and separated, the court will subtract them.  Where the plaintiffs' hours benefitted or addressed both claims, the court will grant those hours "reasonably expended" on the "off-the-clock" claim and exclude those that exceed a "reasonable expend[iture]" on the prevailing claims.  *See, e.g., Certain v. Potter*, 330 F.Supp.2d 576, 585 (M.D.N.C. 2004) (subtracting hours spent on unsuccessful claims "that did not aid the litigation as a whole").

At this stage, the plaintiffs and defendants agree on the omission of all fees and costs pertaining to the North Carolina action (ECF No. 126, Exh. H), the premature Fourth Circuit appeal (*Id.*, Exh. J), unrelated potential legal actions (*Id.*, Exh. I), and work following the service of the Offer of Judgment (*Id.*, Exh. K).[3]  Their disagreement revolves around hours billed for interrogatories, document production, depositions, deposition preparation, and motions practice.[4]

With respect to the hours billed for motions practice, the court finds that Aerotek accurately identified and subtracted the plaintiffs' hours that were attributable solely to the misclassification claims.  As such, the court adopts Aerotek's proposal with respect to the hours billed for motions practice.  (*Id.*, Exh. L.)  The court also adopts Aerotek's proposal to grant compensation for plaintiffs' hours pertaining to the amended complaint, scheduling orders, and settlement negotiations.  (*Id.*)  This amounts to a starting point of $53,669.00 in fees.  (*See id*. at 8.)

Aerotek also contends that the plaintiffs should not recover for any fees based on interrogatories, document production, depositions, deposition preparation, or other discovery-related work.  Aerotek classifies all those hours as "costs related to the misclassification claims" which should not be included in the fee award.  (*Id.*, Exh. F.)  The plaintiffs, by contrast, seek $186,304.50 for that discovery-related work.  (ECF No. 127, Exh. A.)[5]  They argue

---

[3] In their motion, the plaintiffs claim they are entitled to fees for the period after the service of the Rule 68 Offer of Judgment, but the figure they put forth does not factor in those fees. (ECF 127, p. 13; *Id.*, Exh. A.)  In any event, Aerotek rightly noted that the Offer of Judgment explicitly limits the attorney's fees and costs to those "incurred up to February 11, 2011" (the date plaintiffs accepted Aerotek's Offer of Judgment). (ECF No. 123.)  *Accord Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008) (reversing the district court's grant of attorney's fees and costs incurred after the Rule 68 judgment and noting that "the normal operation of Rule 68" is to permit only costs and fees incurred up to the date of issuance).

[4] The parties refer to discovery-related work as Phase III (interrogatories, document production, and other written discovery) and Phase IV (depositions and deposition preparations).  Motions practice is Phase V. *See* ECF No. 126, Exhs. F-L; ECF No. 127, Exh. A.

[5] This figure represents $116,857.00 for Phase III and $69,447.50 for Phase IV.  (ECF No. 127, Exh. A.)

8

"interrogatories; document production; and other written discovery would have been substantially the same if the sole claims brought were 'off-the-clock.'" (ECF No. 127, p. 11.) Moreover, the plaintiffs argue Aerotek would have deposed the named plaintiffs even if the case had been focused on the "off-the clock" claims in the first place. (*Id.*, at 12-13.)

The court agrees with the plaintiffs that some recovery for discovery-related work is warranted – but significantly less than the amount they seek. Granting plaintiffs all of the discovery-related fees they seek would certainly overcompensate them. After all, the discovery process was directed initially toward the plaintiffs' attempts to certify a nationwide class on FLSA misclassification claims, which failed entirely. The "off-the-clock" claims were added after discovery had commenced.[6]

Nonetheless, it would also be erroneous to deny the plaintiffs compensation for *all* the discovery-related billable hours. Aerotek contends the plaintiffs should not recover for *any* hours spent on discovery, but some degree of discovery is clearly reasonable in order to prevail on an FLSA claim. Moreover, as noted, the plaintiffs directly relied on information obtained during discovery to make their successful "off-the-clock" claim.

Given that the plaintiffs' misclassification claims formed the core of the discovery process, but also noting the reductions already applied by the plaintiffs, the court will subtract 50% of the hours billed during those phases ($186,304.50) on the grounds that they pertain to unsuccessful, unrelated claims. This results in a total of $93,152.25, which will be added to the

---

[6] In their reply motion, the plaintiffs proposed a substantially reduced sum for Phases III and IV (reduced from $151,073 to $116,857 for Phase III and from $165,510 to $69,447 for Phase IV). The plaintiffs reached the new sum by "eliminating written correspondence, emails, telephone calls; receipt/scan/upload and intraoffice discovery conferences," as well as "the preparation, conduct and reading/digesting of depositions" by the plaintiffs. (ECF 127, p. 11, 12). The court acknowledges these reductions, but finds they are insufficient to address the fact that discovery focused primarily on the unsuccessful misclassification claims.

9

$53,669.00 in fees for motions practice and other hourly billing. Thus, the initial lodestar figure is $146,821.25.[7]

Having determined how many hours to subtract on account of the plaintiffs' unsuccessful and marginally-related misclassification claims, the court must now determine what percent of the remaining amount to award. *See City of Aiken,* 278 F.3d at 337 ("Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.").

The Supreme Court has "rejected[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986); *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall."). This is so because plaintiffs "seek[ ] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," and fee awards are used to deter future violations. *City of Riverside*, 477 U.S. at 574. Nonetheless, the Circuit has instructed "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Brodziak*, 145 F.3d 194, 196 (internal quotations omitted).

Here, plaintiffs sought recovery on behalf of a nationwide class and ultimately won only $13,940.08 in back pay for all eight plaintiffs. This award was clearly limited relative to the

---

[7] The plaintiffs argue Aerotek is barred from seeking a reduction of fees in this case because it did not "request[] that Plaintiffs submit quarterly statements showing the amount of time spent on the case and/or the total value of the time." (ECF No. 127, p. 3.) According to the plaintiffs, the Local Rules condition the reduction of attorney's fees on the defendants' request for quarterly statements. *See* Local Rules, App. B, Rules and Guidelines for Determining Attorneys' Fees, Section 1(c). Plaintiffs misread the Local Rule. The rule, in fact, provides simply that a defendant may not seek a reduction in attorney's fees on the ground that the plaintiff failed to file quarterly statements unless the defendant first requested the statements.

scope of the litigation. Thus, court will reduce the plaintiffs' award by 25% to reflect the relatively low degree of success even within the "off-the-clock" claims – resulting in a total sum of **$110,115.94** in attorney's fees. *See Almendarez v. J.T.T. Enterprises Corp.*, 2010 WL 3385362 *7 (D. Md. 2010) (reducing the lodestar by 25% to account for the limited level of success); *Jackson v. Estelle's Place, LLC,* 391 Fed. Appx. 239, 244-45 (4th Cir. 2010) *cert. denied,* 131 S. Ct. 1487 (2011) (holding that the district court properly reduced the "traditional lodestar amount" by 25% to reflect the "modest value" of the successful claims).[8]

With respect to the plaintiffs' claimed costs, the Fourth Circuit has held that district courts have discretion to determine the costs that will be assessed against losing defendants in FLSA cases. *Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 549 (4th Cir. 1998). In *Spell v. McDaniel,* the Fourth Circuit explained that costs charged to losing defendants may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). Types of costs charged to losing defendants include "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez*, 2010 WL 3385362 *7 (citing *Vaughns v. Bd. of Educ. of Prince George's County,* 598 F.Supp. 1262, 1289-90 (D.Md. 1984)).

Here, the court finds some of the plaintiffs' claimed costs to be reasonable. (ECF No. 127, Exh. B.) The court will grant the travel costs to the deposition ($48.00) and the FedEx costs (totaling $351.08). Although the claim of $688.88 for "The Rubin Employment Law Group PC Expenses" is somewhat vague, the court will assume the entry pertains to computer research and other computer-related litigation costs and will grant that sum. (*Id.*) With respect to the remaining five claims for "EBT," the court declines to grant the costs. These entries lack the

---

[8] Unpublished opinions are not binding and are cited only for their reasoning.

basic level of detail sufficient for the court to understand the nature of the costs or why they should be granted.  The court can only assume "EBT" means "examination before trial."  Even so, the specific amounts of each entry are unexplained and unjustified.  For two of the three entries, the chart indicates the initials "JER," which refers to an attorney with an hourly rate of $400.  If those entries refer to attorney work, then it is unclear why the examinations are listed as costs rather than fees.  Fee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs.  *See e.g., Spencer v. General Elec. Co.*, 706 F. Supp. 1234, 1244 (E.D. Va. 1989) (stating that the burden "lies squarely on plaintiff to submit sufficiently detailed documentation to establish the reasonableness of the fee award sought.").  Plaintiffs have failed to meet their burden with respect to these costs.  As such, the total costs awarded will be **$1,087.96.**

### *Johnson* factors

Finally, the court notes that the reasonableness of fee petitions historically has been assessed with respect to the following, known as the *Johnson* factors:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citing *Allen v. United States*, 606 F.2d 432, 436 n.1 (4th Cir. 1979) and *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).  Although the Supreme Court has recently shed doubt on the reliability of this approach and described it as an "alternative" to the lodestar method, it appears that courts

continue to consider the *Johnson* factors in determining attorney's fees. *Perdue*, 130 S. Ct. at 1672 ("This [*Johnson*] method, however, gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.") (internal quotations omitted); *but cf. Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1049 (11th Cir. 2011) (reviewing the district court's fee award in a common fund case with reference to the *Johnson* factors); *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 380-81 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 589 (2011) (same in civil rights case); *Estelle's Place,* 391 F. App'x at 243 (same in FLSA case); *Trustees of Local 531 Pension Fund v. Flexwrap Corp.*, -- F. Supp.2d --, 2011 WL 3348080 (E.D.N.Y. 2011) (applying the *Johnson* factors in ERISA case). As explained in a recent unpublished opinion of the District Court for the Eastern District of New York:

> The Supreme Court has recently expressed skepticism with the propriety of the *Johnson* approach, arguing that it gives too little guidance to judges by placing the emphasis on factors and considerations that are overly subjective. Instead, it found that the lodestar approach provided better limits on a judge's discretion by making the determination more objective, providing for fee awards that are more predictable and less disparate. However, the *Johnson factors*, as opposed to the *Johnson method*, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate. *Kenny A.* cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee.

*Jin v. Pac. Buffet House, Inc.*, 2010 WL 2653334 * n.2 (E.D.N.Y. 2010) (internal citations omitted).

In assessing the attorney's fees and the appropriate deductions in this case, the court has considered all the *Johnson* factors (most of which are subsumed in the rate and hour analysis). This includes some elements increasing the risk level and undesirability of the case as well as a comparison to awards made in similar cases. *See, e.g.*, *Chapman v. Ourisman Chevrolet Co., Inc.*, 2011 WL 2651867 * 13, 18 (D. Md. 2011) (awarding $37,292.52 in fees for a recovery of

$3,100 in a FLSA case); *Almendarez*, 2010 WL 3385362 *7 (granting $84,000 in fees for an underlying recovery of $6,600, after making significant reductions from the plaintiff's initial request); *Castel v. Advantis Real Estate Services Co.*, 2008 WL 3348774 *4 (E.D.Va. 2008) (awarding $139,668 in attorney's fees on the grounds that the "award of attorney fees encourages the vindication of employees' rights" and noting that "a substantial reduction based on the amount of damages awarded to plaintiffs would serve as an incredible disincentive for attorneys to accept FLSA cases.").

Accordingly, the court awards attorney's fees to the plaintiffs in the amount of $110,115.94 and costs in the amount of $1,087.96.

A separate Order follows.

<u>March 21, 2012</u>  _____/s/_____
Date  Catherine C. Blake
United States District Judge